**UNITED STATES of America,
Plaintiff,**

v.

**Harold Edward BURTON, Defendant.**

**No. 23654–4.**

United States District Court,
W. D. Missouri, W. D.

Dec. 1, 1972.

J. Whitfield Moody, First Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Austin F. Shute, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This is a jury-waived case in which the defendant is charged by way of a second count of a two count indictment with violating 18 U.S.C. § 922(e). The first count under 18 U.S.C. App. § 1202(a)(1) charging the defendant with the unlawful possession and transportation of a firearm in interstate commerce has been tried before a jury with a resulting finding of guilty.

All of the facts of this case are stipulated as follows:

(1) That on or about the 11th day of January, 1972, at Kansas City, Missouri, in the Western District of Missouri, defendant Harold Edward Burton did deliver a suitcase, admitted as Government's Exhibit No. 1 herein, without objection subject to defendant's pretrial motion to suppress evidence, to Braniff Airlines, a common carrier, for transportation and shipment in interstate commerce from Kansas City, Missouri, to Minneapolis, Minnesota, which suitcase contained a loaded firearm, to wit, a .357 Magnum Smith and Wesson revolver, Serial No. S–283727, and the ammunition therefore, consisting of six rounds of firearm ammunition, all of which has been admitted as Government's Exhibit No. 2, without objection subject to the defendant's pretrial motion to suppress evidence.

(2) It is further stipulated and agreed that Harold Edward Burton purchased a round-trip ticket from Kansas City, Missouri, to Minneapolis, Minnesota, on or about January 11, 1972, and was preparing to board a Braniff airline flight departing Kansas City, Missouri, for Minneapolis, Minnesota, and that the suitcase, Government's Exhibit No. 1, and the firearm and ammunition therein, Government's Exhibit No. 2, would have been loaded onto the flight for which the defendant had purchased a ticket to Minneapolis, Minnesota, and was preparing to board at Kansas City, Missouri.

(3) It is further stipulated and agreed that Harold Edward Burton did not give written or oral notice to the common carrier or any employee thereof, that such firearm or ammunition was to be transported or shipped and the defendant further did not personally deliver said firearm or ammunition into the custody of the pilot of the flight for which he had purchased a ticket, or any other employee of the common carrier, or otherwise advise them of its presence in the suitcase, except as described in Paragraph One of this stipulation.

(4) It is further stipulated and agreed that defendant Harold Edward Burton is not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms or ammunition, and that the suitcase and firearm and ammunition contained therein was not being shipped to such a licensed importer, licensed manufacturer, licensed dealer or licensed

collector of firearms, but was to be delivered to the defendant Harold Edward Burton at Minneapolis, Minnesota.

Title 18, Section 922(e) United States Code states:

It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

Therefore, it is incumbent on the Court to apply the stipulated facts to the applicable law to determine the guilt or innocence of the defendant. Before this may be done, however, it is first necessary to analyze various challenges raised by the defendant by way of a motion for judgment of acquittal.

Reserving the discussion on the sufficiency of the evidence until it has been decided whether or not the charge is properly submitted, it is next contended that the government's evidence should be suppressed in that it was a product of illegal search and seizure in violation of the fourth amendment. For the reasons enunciated in the order overruling the motion to suppress prior to the trial of the first count, this contention has been previously found to be without merit.

United States v. Burton, 341 F.Supp. 302 (W.D.Mo.1972).

It is also alleged that because the defendant has previously been convicted under Count I, the government is collaterally estopped from proceeding on this count and that the prosecution here constitutes double jeopardy. It is apparent from a reading of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), that this case does not involve the application of collateral estoppel in the manner urged by the defendant. Had the jury found the defendant innocent of the initial count, the doctrine may well have precluded trial here. As to the contention that this trial would be in violation of the defendant's fifth amendment right to be free from being twice placed in jeopardy for the same offense, it is evident that the evidence needed to secure a conviction of the present charge would not have sustained a conviction of the former charge. The first charge contains an element not necessary for the second, that is, the prior conviction of a felony. The second charge differs in many respects from the first, concerning the delivery to a carrier, and the notice required. Therefore, the trial of the second charge would not be a successive prosecution for the same offense, charged initially and the double jeopardy ban would not apply. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Note, Twice in Jeopardy, 75 Yale L.J. 262, 277 (1965).

The final assertion warranting discussion concerns an attack on the validity of the statutory provision 18 U.S.C. § 922(e). In order to determine whether the statute was intended to prohibit conduct such as here resulted in the returning of the indictment, it is necessary to delve into the legislative history of the act which this statute was a part.

Sections 921–928 of Title 18 were enacted together and constituted Public Law 90–618, more commonly cited as The Gun Control Act of 1968.

The purpose of the bill was "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders". House Report No. 1577, 3 U.S.Code, Cong. and Admin.News, p. 4411 (90th Congress, 2nd Session 1968). It appears from the congressional reports that the provisions were not specifically designed to halt the highjacking of airplanes, but were instead aimed at curbing the growing use of firearms through a strengthening of federal control of the interstate firearms traffic. In order to effectuate this objective, the subject legislation placed various controls over the sale, shipment, and transportation of firearms and ammunition in interstate commerce. In order to allow the states to effectively police their gun control legislation, it was thought necessary to restrict and regulate interstate movement of firearms. Although the Omnibus Crime Control and Safe Streets Act of 1968 contained several provisions regulating firearms, Congress thought it necessary to pass tighter restrictions on the shipment of destructive devices and to include a provision for notice to carriers of the contents of any package containing any firearm or ammunition. House Report, p. 4413. To implement this objective the Gun Control Act provides, inter alia:

(a) penalties for any person, other than a licensed importer, manufacturer, or dealer, from engaging in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce; (§ 922a1)

(b) penalties for any licensed importer, manufacturer, dealer, or collector to ship or transport in interstate or foreign commerce any firearm or ammunition to any person other than a licensed importer, manufacturer, dealer, or collector, with certain limited exceptions; (§ 922a2)

(c) penalties for any person, other than a licensed importer, manufacturer, dealer or collector, to transport into or receive in the state where he resides any firearm obtained by him from outside that state, with certain limited exceptions; (§ 922a3)

(d) penalties for any person, other than a licensed importer, manufacturer, dealer, or collector, to transport in interstate or foreign commerce any destructive device, except as specifically authorized by the Secretary consistent with public safety and necessity; (§ 922a4)

(e) penalties for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce to persons other than licensed importers, manufacturers, dealers, or collectors any package or container containing a firearm or ammunition without written notice to the carrier of the shipment, except that a passenger may deliver the firearm into, the custody of the pilot, conductor, or operator of the carrier for the duration of the trip without violating this provision; (§ 922e, the statute under which the defendant is here charged)

(f) extensive licensing requirements for persons desiring to, become licensed importers, manufacturers, dealers, or collectors. (§ 923)

In the sectional analysis of the bill, the House Report noted that the purpose of § 922(d) (now § 922(e)) requiring the giving of notice to a carrier prior to the shipping of a firearm was designed to effectuate the section prohibiting a carrier from transporting a firearm in violation of the act. House Report, p. 4420. In order to restrict the unauthorized transportation of fireams in interstate commerce, Congress found it necessary to impose criminal sanctions on those persons who intended to ship firearms by carrier but who failed to give the requisite notice to the carrier when required. In this manner if a shipment of firearms

was found to be in violation of the act, there would be someone culpable—either the carrier or the person who delivered the shipment.

However the act did not intend to prohibit or impose stringent reporting requirements on all interstate transportation of firearms by unlicensed persons, most noteworthy of which is the hunter desiring to transport a weapon in furtherance of the sport. For this reason, Congress made a limited exception to the written notice requirement; that is, a passenger who possesses a firearm being transported aboard a carrier for movement with the passenger may deliver said *firearm* into the custody of the pilot, captain, conductor or operator of the carrier for the duration of the trip without violating these provisions.

■■ It readily appears that one of the specific purposes of the statute was to prohibit the interstate transportation of a firearm by a carrier to persons not properly licensed to receive them. Therefore, the law places upon any person desiring to transport a firearm or ammunition in interstate or foreign commerce to persons other than those properly licensed, a duty to give notice to the carrier. It thereafter becomes the duty of the carrier to determine whether such shipment would be in violation of the law. Failure to satisfy the statutory duty placed upon those persons may result in the imposition of the penalty provision of the statute if a violation of the act has been discovered.

■ Accordingly, the entire statutory scheme discloses without question the purposes and the clear prohibitions intended, and the assertion that § 922(e) fails to state a criminal offense or is otherwise constitutionally defective on its face is without merit.

Applying the stipulated facts to the statutory provision, the government has made a submissible case by presenting and setting forth sufficient evidence on each and every element of the offense to warrant the finder of fact to return a verdict of guilty.

The essential elements which must be proved to establish a violation of § 922(e) are: (1) knowing delivery, (2) to a common carrier, (3) for transportation or shipment in interstate commerce, (4) to persons other than licensed importers, manufacturers, dealers, or collectors, (5) a package or container which the defendant knew to contain a firearm or ammunition,[1] (6) without a) giving written notice to the carrier that such firearm or ammunition was to be shipped or transported, or b) delivering said firearm or ammunition into the custody of the pilot, captain, conductor, or operator of the common carrier for the duration of the trip.

■ The evidence shows that the defendant purchased a ticket from a common carrier by air to Minneapolis, Minnesota, and delivered to the airline a suitcase to be returned to him upon arrival in Minneapolis. Upon inspection it

---

1. Although § 922(e) does not specifically state that a person must "know" the package or container contained a firearm or ammunition, it is implicit from the wording of the statute and the intent of Congress that such knowledge is required. Therefore the statute is logically interpreted to read that the unlawful act is the knowing delivery of a package or container to a carrier with the knowledge that such package contained a firearm or ammunition. Of course, the element of scienter may be inferred without a specific showing of knowledge where the facts warrant. United States v. Jones, 418 F.2d 818 (8th Cir. 1969); United States v. Brotherton, 427 F.2d 1286 (8th Cir. 1970).

This position is not novel. In Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 480, 40 L.Ed. 606 (1895) the defendant was charged for knowingly depositing obscene matters in the mail. The Supreme Court held that knowledge of the contents of the letter was required in addition to the knowing deposit of the letter in the mail. Since the offense charged here is malum prohibitum, the penal statute must be construed strictly in favor of the defendant, and to do so would require the interpretation adopted by the Court. Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959).

was found the suitcase contained a loaded firearm. Since the defendant was not a licensed importer, manufacturer, dealer, or collector the government has sufficient evidence on elements 1 through 5 to warrant submission.[2] However, as to the sufficiency of the evidence concerning the failure of the defendant to give the required notice, a more detailed examination is necessary.

The defendant contends that the fact he delivered the suitcase into the custody of the carrier for the duration of the flight, and since he was a passenger on that flight, full compliance with the statute had been satisfied. The defendant's assertion is correct in the sense that his failure to give written notice to the carrier of the weapon does not necessarily constitute a violation of the statute. Since Mr. Burton was to be a passenger aboard the carrier in which the firearm was to be transported, the statute provides for alternative means of compliance. He could either give the written notice, or he could deliver the firearm and ammunition to the pilot, captain, conductor, or operator. However, it can be readily seen from a reading of the statute that Congress intended this exception to be limited. In the first portion of § 922(e), the statutory language is directed to "any *package* or other *container* in which there is a firearm or ammunition," and makes provision for written notice. However, when the statute deals with the passenger alternative it states, " . . . may deliver said *firearm or ammunition* into the custody of the pilot . . .." Congress intended, as it so clearly stated in the statute, that the firearm itself be delivered by the passenger into the custody of the pilot, captain, conductor or operator of the common carrier. The failure of the statute to allow a passenger to deliver the container instead of the firearm itself to certain designated persons is obvious. Such would circumvent the intention of the Gun Control Act to limit unauthorized interstate transportation of firearms and ammunition. Therefore, to fall within the exception provided for passengers in this provision actual delivery of the firearm and ammunition to one of the designated persons must have been accomplished. The defendant did not deliver the firearm as required, and, accordingly, his act of handing over the suitcase to the carrier did not constitute compliance with the statute.[3]

As earlier noted, Title 18 § 922(e) United States Code states, "It shall be unlawful for any person *knowingly* to deliver . . .." Thus, an essential element of the offense charged is that the defendant knowingly delivered to the carrier a suitcase which was known by him to contain a firearm. Riss and Company v. United States, 262 F.2d 245 (8th Cir. 1958).

As set out in 1 Devitt and Blackmar, Federal Jury Practice and Instructions § 16.07 (1970), it is stated: "An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reasons. The purpose of adding the word 'knowingly' was to insure that no one would be convicted for an act done because of mistake, or accident, or other innocent reason."

The stipulated circumstances convince the Court beyond a reasonable doubt that the defendant did on January 11, 1972, at Kansas City, Missouri, deliver

2. As will be discussed further, infra, the Court is of the opinion that the stipulated facts are sufficient to allow a submission as to the element of knowledge from the showing that the defendant delivered a suitcase to the carrier which was to be returned to him upon arrival in Minneapolis. Since the suitcase was found to contain a firearm without any break in the chain of custody, it could be inferred that the defendant knew of its contents.

3. We need not concern ourselves here under these facts with situations such as where the firearm is delivered over to the pilot in a gun case or other similar object under circumstances where it is clear the recipient knows he is receiving a firearm.

to Braniff Airlines, a common carrier, for transportation and shipment in interstate commerce from Kansas City, Missouri, to Minneapolis, Minnesota, a package (suitcase) which was known by him to contain a loaded firearm. The Court, as the finder of the facts, is entitled to draw reasonable inferences from the stipulated facts and certainly it is a reasonable inference that the defendant knew the suitcase contained the firearm. There is nothing in the stipulation or the evidence to suggest any lack of such knowledge.

And as earlier indicated, the delivery of the suitcase containing the gun to the carrier for shipment is not a delivery of the gun into the custody of the pilot, captain, conductor or operator as contemplated by the statute.

In accordance with the above findings and opinion the defendant, Harold Edward Burton, is found by the Court to be guilty beyond a reasonable doubt of the charge contained in Count II of the indictment and judgment in accordance therewith is entered.