**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**ONE HECKLER–KOCH RIFLE,
etc., Defendant.**

**Appeal of Don McBAIN.**

**No. 79–2459.**

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1980.

Decided Aug. 28, 1980.

---

Jerome M. Sax, Chicago, Ill., for defendant.

Thomas P. Sullivan, U. S. Atty., Mary Thomas, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUDAHY, Circuit Judges.

FAIRCHILD, Chief Judge.

This is a forfeiture action by the United States against one Heckler-Koch rifle and various firearm accessories. Defending the action is Don McBain (the respondent). The district court granted the government's motion for summary judgment from which the respondent appeals. We reverse.

## I.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). To the extent that the record is unclear or the facts conflicting, the evidence in the record must be viewed in the light most favorable to the party opposing the motion. Applying that standard to the rather untidy record before us, we believe that it shows the following course of events. In July, 1976, the defendant property was "loaned to McBain by one Sam Puleo, a resident of Fort Lauderdale, Florida." (Answer to Amended Complaint ¶ 6, R. 37.) Uncontested affidavits submitted by the government establish that Puleo has been convicted of a felony and has never been granted relief from the disabilities imposed by the Gun Control Act because of that conviction. (R. 46, Ex. B; R. 50.) On July 18, 1976, the respondent returned "home to Chicago" with the rifle and accessories on a Delta Airlines flight. Before boarding he delivered the rifle "to agents of the Common Carrier" and "informed said agents and employees of Delta Airlines of the nature of the item being given to them for transport." (Answer to

Amended Complaint ¶ 7.) Upon his arrival at O'Hare International Airport, the respondent did not recover custody of the rifle from Delta. The defendant property was later seized by federal officials at O'Hare and it remains in the possession of federal authorities. The respondent as of July 19, 1976, did not possess an Illinois Firearms Owner's Identification Card. (R. 21, Ex. A.) Neither was he a federally licensed importer, manufacturer, dealer, or collector of firearms. (This fact, repeatedly alleged in the government's complaints, has never been specifically denied by the respondent. It is obviously a matter within his personal knowledge and his failure to deny the allegation must be deemed an admission of its truth. Fed.R.Civ.P. 8(d). *See also* R. 42, Ex. B.)

18 U.S.C. § 924(d), the provision of the Gun Control Act which authorizes this action, provides in pertinent part: "Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter . . . shall be subject to seizure and forfeiture . . . ." The government's complaint alleged that the respondent's conduct in obtaining the defendant property in Florida and transporting it to Illinois violated a variety of the provisions of the Gun Control Act. Its motions for summary judgment, however, relied on only two: 18 U.S.C. § 922(e) and 18 U.S.C. § 922(a)(3).[1]

## II.

The government's first motion for summary judgment advanced the theory that the respondent's conduct violated 18 U.S.C. § 922(e). That section provides:

It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

It is uncontested that the respondent did not provide Delta Airlines with written notice that he was presenting a firearm for transport. He conceded this at oral argument. The controversy here concerns the provision permitting a passenger to deliver the firearm "into the custody of the pilot,

---

1. As this court noted in *United States v. One Mercedes Benz 280S*, 618 F.2d 453 (7 Cir. 1980) "forfeiture is a civil proceeding *in rem*. The . . . inanimate object is treated as being itself guilty of wrongdoing, regardless of its owner's conduct." Thus, even though the respondent has disclaimed any ownership interest in the defendant property, the property may be forfeited because of its involvement in the respondent's violation of the provisions of the Gun Control Act. *United States v. One Assortment of 93 Firearms*, 463 F.Supp. 365, 369–70 (D.S.C.1978).

Conversely, although the government has not argued this point, it would seem that the defendant property may be forfeited without regard to the respondent's conduct if it were established that it was involved in someone else's violation of the Act. For example, in this case the record shows that the gun was loaned to the respondent by Sam Puleo. Puleo—the apparent owner of the rifle—had earlier been convicted of a felony and had never applied for relief from the disabilities imposed as a result of that conviction by the Gun Control Act. *See* 18 U.S.C. § 925. The record also shows that the defendant property had "been shipped or transported in . . . foreign commerce" because Heckler and Koch is a West German firearms manufacturer. This evidence arguably established that Puleo had violated 18 U.S.C. § 922(h), thus rendering the defendant property subject to forfeiture. We need not decide this question here. The theory was not reasonably presented by the government's complaint and therefore it is questionable whether the respondent has had a fair opportunity to litigate it. If on remand the government wishes to pursue this theory, it should seek leave to amend its complaint.

captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter." We shall refer to this portion of § 922(e) as the "passenger proviso."

Before the district court, the government argued that the respondent had failed to specifically allege delivery into the "custody of the pilot" or other individual specifically named in the proviso. This, suggested the government, constituted an implicit admission of the respondent's failure to comply with the proviso, entitling the government to summary judgment. The district court denied the motion for judgment, holding that although the respondent's pleadings were less than clear, arguably his conduct fell within the ambit of the proviso. Subsequently, the respondent's attorney represented to the district court in a brief that "Defendant [sic] does not yet know the name of the baggage clerk who was told that the weapon was being presented for transport." (R. 44.) Although this representation is neither in a pleading nor an affidavit, arguably it may be treated as an admission that delivery was not made into the hands of the airline's pilot, and, for our present purposes, we will so assume. *See* 10 *C. Wright & A. Miller, Federal Practice and Procedure* § 2723 at 490 (1973) ("admissions in the brief of the party opposing the motion may be used in determining that there is no genuine issue as to any material fact, since they are func-

tionally equivalent to 'admissions on file' "). The issue thus presented is whether delivery of the firearm to an airline baggage clerk, instead of a pilot, is insufficient as a matter of law to constitute compliance with the passenger proviso.[2]

The government, citing *United States v. Burton*, 351 F.Supp. 1372 (W.D. Mo.1972), aff'd, 475 F.2d 469 (8th Cir.), *cert. denied* 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973), and *United States v. Williams*, 485 F.2d 1383 (4th Cir. 1973), *cert. denied* 416 U.S. 941, 94 S.Ct. 1947, 40 L.Ed.2d 293 (1974), argues that the passenger proviso must be strictly construed to mean that a traveler with a gun must personally deliver the firearm into the hands of the "pilot, captain, conductor, or operator" and delivery to other agents of the common carrier cannot constitute compliance with the proviso. Neither case cited by the government directly supports its position. First, the Gun Control Act is a penal provision. *See* 18 U.S.C. § 924(a). Thus, if the act is to be strictly construed, it should be strictly construed against, not in favor of, the government.[3] Second, *Burton* and *Williams* do no more than hold that to comply with the passenger proviso, a passenger must at least give the carrier actual notice that the item to be transported is a firearm.[4] This construction of the proviso is necessary to effectuate the purpose of the Act to restrict certain interstate commerce in firearms. Section 922(f) makes it unlawful for a carri-

---

2. Although the district court denied the government's motion for summary judgment as to this issue, the government has argued this theory on appeal and we may consider whether it would constitute a basis for affirming the judgment. *See, e. g., Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 617 F.2d 468, 472 n.11 (7th Cir. 1980); *Miller v. Gateway Transportation Co.*, 616 F.2d 272, 275 n.7 (7th Cir. 1980).

3. Indeed, the *Williams* opinion cited by the government recognizes that criminal statutes are to be strictly construed, although it qualifies that rule of construction with another: "[S]tatutes are not to be construed in a manner which would defeat their clear purpose." 485 F.2d at 1384. The present case, of course, is a civil proceeding *in rem*, not a criminal prosecution. Nevertheless, to make a case for forfeiture, the government must establish a violation

of a penal provision. Therefore, we believe the rule that criminal statutes are to be strictly construed governs here.

4. In *Burton* the defendant merely presented a suitcase containing a firearm to the carrier. It was stipulated that the defendant "did not personally deliver said firearm or ammunition into the custody of the pilot of the flight . . . or any other employee of the common carrier, or otherwise advise them of its presence in the suitcase." 351 F.Supp. at 1374. In *Williams* the passenger gave a suitcase to the pilot without informing him of the suitcase's contents. The court held that " 'custody' must be construed to mean a transfer of control in a manner which gives the carrier actual notice of the presence of a firearm." 485 F.2d at 1385.

er to transport firearms when it has reasonable cause to believe that the shipment would violate the Act. Section 922(e) was enacted in order to inform the carrier of the character of the items it was shipping, thus placing on it the duty to inquire into the legality of the shipment. Thus, it is imperative that the carrier be given actual notice of the character of the items it is transporting. Here the respondent in his answer alleged that he delivered the rifle "to agents of the common carrier" and "informed said agents . . . of the nature of the item being given to them." If his representations, as yet unrebutted by the government, are true, the respondent did not run afoul of the holdings of *Burton* and *Williams.*

■ Since neither *Burton* nor *Williams* answers the precise question before us, we must construe the passenger proviso in a manner consistent with its language and purpose keeping in mind that it is a criminal provision that we are examining. The government has suggested no reason why only manual tradition into the hands of the pilot in the case of an airline would be consistent with the purpose of the Act. Although § 922(e) does distinguish between the "carrier" and "the pilot, captain, conductor or operator of such . . . carrier," this difference in the statute's terminology does not necessarily carry the significance that the government suggests. The proviso containing the latter language was added on the floor of the House after the bill had been reported out of committee. *See* 114 Cong.Rec. 23088 (July 24, 1968). The purpose of the proviso is evidently to permit the lawful transportation of a passenger's firearm while insuring that the weapon is placed under the control of the person in charge of the trip. It would seem that a passenger who transfers custody of a firearm to a responsible agent of the carrier and who gives notice that it is in fact a firearm which is being transferred would substantially comply with the proviso.

That conduct could reasonably be considered constructive delivery into the custody of the pilot.[5] Indeed, one decision implies that delivery of a firearm to an airline ticket agent might be sufficient to come within the proviso as long as actual notice that a gun is being delivered is given. *See United States v. Keuylian,* 602 F.2d 1033 (2d Cir. 1979). This interpretation of the proviso also seems more reasonable than that advanced by the government because the rather rigorous security measures in effect at many airports make it unlikely that an airline passenger could personally deliver a firearm into the custody of the airline's pilot. We cannot attribute to Congress the intent to specifically declare certain conduct to be outside the penal provisions of the Act with the knowledge that it is practically impossible to engage in that conduct. To do so would render the passenger proviso a nullity and be contrary to the practice of the courts to construe criminal statutes in favor of the defendant.

■ We conclude that as long as a passenger delivers the firearm to a responsible agent of the airline for delivery to the pilot with notice that it is a firearm that is being transferred, the passenger has complied with the requirements of 18 U.S.C. § 922(e). Whether, as appears to be the case here, a baggage clerk is necessarily such a responsible agent of a carrier need not be decided now. That determination may very well depend on the facts of the particular case. It is sufficient for present purposes to note that on the record before us we cannot say that there is no genuine issue of material fact as to the identity and responsibility of the person to whom the respondent claims to have delivered the firearm and the circumstances and understandings accompanying that delivery. Therefore the district court's judgment cannot be affirmed on the basis of 18 U.S.C. § 922(e).

---

**5.** Presumably many airline employees are instructed to transmit to the pilot firearms delivered to them so that the firearms may be stored in the cockpit or other secure area within the plane.

## III.

The district court, although it denied the government's motion for summary judgment as to the respondent's compliance with § 922(e), granted a second motion as to 18 U.S.C. § 922(a)(3). That section provides, with exceptions that the respondent does not suggest are applicable here, that it shall be unlawful

> for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that State . . . .

The respondent has addressed this provision only indirectly before this court. It is apparently his position that his alleged compliance with the passenger proviso in § 922(e) renders inapplicable all other provisions of the Gun Control Act because that proviso provides that a passenger may give over custody of a firearm to the carrier "without violating any of the provisions of this chapter."

Were we to accept the respondent's interpretation of the passenger proviso, the existence of a genuine issue of material fact about the respondent's compliance with the proviso would preclude judgment at this stage of the proceedings on the question of his compliance with § 922(a)(3). Although the respondent's interpretation of the proviso is not indefensible if it is read literally, such a construction would be plainly inconsistent with the purpose of the Act to restrict interstate commerce in firearms. Hence, we decline to reverse the district court's judgment on the basis advanced by the respondent. Our examination of the record, however, convinces us that another issue of material fact remains to be resolved before it can be determined whether the respondent violated § 922(a)(3).

The proviso relied on by the respondent as a defense to § 922(a)(3) has little legislative history to help clarify its meaning. As we have already noted, it was proposed as an amendment from the floor of the House after the bill was reported out of committee. The amendment was adopted without debate. 114 Cong.Rec. 23088 (July 24, 1968). We think it relatively clear, however, that the proviso as a whole was only intended to provide a means by which persons who could otherwise lawfully take their firearms across state lines could bring the firearms with them when traveling by commercial carrier. The Act contains broad bans on interstate transportation of and commerce in firearms by other than federally licensed individuals. Congress, however, intended that certain individuals would be permitted to obtain guns in one state and later transport them to another. Examples include a resident of one state who purchases a rifle or shotgun in a contiguous state under certain conditions, 18 U.S.C. § 922(b)(3)(A), and a sportsman who loses his gun while hunting in another state and who obtains a replacement, *id.* at § 922(b)(3)(C). It seems plain that the proviso in § 922(e) contemplated relief only for those who could otherwise lawfully transport arms across state lines.

This view finds some support in the language of the proviso which applies only to the passenger "who owns or *legally* possesses" a firearm. (Emphasis added.) The argument of the respondent if taken to its logical conclusion would permit an unlicensed convicted felon who had never applied for relief from the disabilities imposed by the Gun Control Act to absolve himself of criminal liability for possession of a firearm merely by booking passage on an airline and turning his firearm over to the carrier. This certainly could not be the purpose of the proviso and illustrates that its protection extends only to those who could otherwise lawfully transport arms across state lines. Moreover, it would be particularly inappropriate to apply the proviso in § 922(e) as a defense to a violation of § 922(a)(3) because the latter provision explicitly lists certain exceptions to the prohibition on obtaining a firearm in one state and transporting it to one's state of residence. The enumeration of specific exceptions ordinarily should be deemed to exclude the general.

■ We conclude that the respondent's construction of § 922(e) would defeat the purpose of Congress to prevent interstate commerce in firearms except in narrowly defined circumstances. We therefore agree with the government that the question of whether the respondent violated § 922(a)(3) must be considered apart from the question of his compliance with the passenger proviso.

Nevertheless, we believe that summary judgment on the question concerning § 922(a)(3) was inappropriate in this case. It is uncontested that the respondent is a resident of Illinois. His answer admitted that Illinois was his "home." It is also clear that he "obtained" the rifle and ammunition in Florida. Therefore, his conduct in transporting those items from Florida to Illinois falls within the literal sweep of § 922(a)(3) "to transport into . . . the State where he resides . . . any firearm . . . obtained . . . outside that State." Nevertheless, in his response to the government's second motion for summary judgment, the respondent asserted that he was a resident of Florida as well as Illinois because "he owns a three flat building in Miami Beach, Florida that he visits often and where he has an apartment set aside for use as his residence." He therefore maintained that his dual residence rendered inapplicable the bar on transportation of firearms contained in § 922(a)(3). (R. 45.) The government introduced into the record nothing which would tend to disprove the respondent's assertion.[6] The district court held it was unnecessary to resolve this factual issue because "[a] literal reading of that section reveals that the violation lies in *transporting into* a state of residence a firearm purchased *outside that particular state.*" (R. 59.)

Although the district court's construction of the statute is certainly a reasonable one, the legislative history of the provision—not called to the attention of the district court by the parties—establishes that § 922(a)(3) was not intended to apply to transportation of a firearm between two states by a person with residences in both states. *See* 114 Cong.Rec. 22785 (July 23, 1968) (remarks of Rep. Corman):

> For the purposes of this bill, a person may have more than one residence. If he resides for a substantial period of time in one place, he may legally purchase a weapon, as far as this bill is concerned and assuming, of course, he complies with local law.
>
> So we ought not to confuse a person's ability to buy a gun in his place of temporary residence with the attempt to frustrate the purpose of this bill, which is to prevent a person from going outside the State of residence to buy a gun and then taking it back to his own State of residence.

In fact, twice during the debate on the bill on the floor of the House, the record was supplemented with a letter from the Attorney General which clarified the applicability of the provision with respect to individuals having more than one state of residence:

> 2. *Does section 922(a)(3) bar the transport of legally acquired firearms from one state to another on the part of an individual having a residence in each of two or more states?* The phrase "State where he resides" as used in section 922(a)(3) is not specifically defined in the statute. However, similar language is frequently used in statutes and is construed by the courts in each instance to reflect the purpose of the particular stat-

---

**6.** The government before the district court did complain that the respondent was attempting to amend his pleadings by his brief in asserting his dual residence. The district court, although not explicitly deciding the question, seemed to regard the respondent's allegations as properly raised. Under the circumstances of this case, we agree that the issue was not foreclosed by the pleadings. *Cf. White Motor Co. v. United States*, 372 U.S. 253, 254–55, 83 S.Ct. 696, 697,

9 L.Ed.2d 738 (1963). The pleadings did not squarely address the possibility of the respondent's dual residence. If this question of fact is material, as we hold it is, then it would seem that it was the government's initial burden, as the movant for summary judgment, to establish that the respondent was not a resident of Florida when he obtained the rifle. Nothing in the record negates this possibility.

ute. See, for example, *Downs v. Commissioner*, 166 F.2d 504, 508 (9th Cir. 1948). *In re National Discount Corp.*, 196 F.Supp. 766, 769 (W.D.S.C.1961), and *Gallagher v. Carroll*, 33 F.Supp. 945, 946 (E.D.N.Y.1939). The purpose of limiting sales to "resident", and of prohibiting transportation into one's state of residence of firearms purchased outside that state is to enable states to control access to firearms by persons permanently or for substantial periods of time physically located within their borders. The term "residence" is used rather than the term "domicile" to make clear that a person's residence is not limited to the place where he may vote, or pay taxes. At the same time, the term "resident" would not include transients, but only persons who live in a place for a substantial period of time. Thus, if a Member of Congress lives in the District of Columbia during the legislative session, he could lawfully purchase a firearm there and transport it to his home state when he returns there.

This interpretation is also reasonable from the point of view of dealers. When a dealer asks for proof of residence, he may rely on commercially reasonable identification—such as a driver's license or credit cards showing a person's residence address. The dealer will be making a factual rather than a legal determination. If a person has residences in two states, firearms dealers in both states may lawfully sell to him.

*Id.* at 22786 (July 23, 1968). *See also, id.* at 23076–77 (July 24, 1968).

 Because § 922(a)(3) on its face does not speak directly to the situation in which an individual has more than one resi-

dence, we think that it should be construed in the light of this legislative history not to prohibit the transport of a firearm obtained in one state of residence to another. This construction of the statute seems consistent with administrative regulations on the subject promulgated by the Secretary of the Treasury.[7] Moreover, we regard it as consistent with the congressional purpose to restrict interstate firearms traffic without unduly interfering with the legitimate uses of firearms by law-abiding citizens.

### IV.

To summarize, we conclude, as did the district court, that a genuine issue of material fact remains about whether the respondent complied with the passenger proviso contained in 18 U.S.C. § 922(e). Although the existence of the same factual issue would not alone preclude summary judgment on the question of a violation of 18 U.S.C. § 922(a)(3), another question of fact presents summary judgment on that basis: Whether the respondent was a resident of Florida when he obtained the defendant property. We therefore reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

---

7. *See* 27 C.F.R. § 178.11 (definition of "state of residence"). The definition of residence established in the regulations distinguishes between a place where "an individual regularly resides, or maintains his home" and a place of "temporary sojourn." The examples provided in the regulation recognize that an individual can have more than one residence:

*Example 1.* A maintains his home in State X. He travels to State Y on a hunting, fishing, business or other type of trip. He does not become a resident of State Y by reason of such trip.

*Example 2.* A maintains a home in State X and a home in State Y. He resides in State X except for the summer months of the year and in State Y for the summer months of the year. During the time that he actually resides in State X he is a resident of State X, and during the time that he actually resides in State Y he is a resident of State Y. Thus, under the regulations it would seem that in order for the respondent's conduct in this case to be lawful, he must have been "actually residing" in Florida when he obtained the rifle.