**UNITED STATES of America, Appellee,**

v.

**Louis MATTEO, Appellant.**

**No. 1484, Docket 83–1104.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 10, 1983.

Decided Oct. 4, 1983.

Robert Stolz, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

George Sheinberg, Brooklyn, N.Y., for appellant.

Before VAN GRAAFEILAND and PRATT, Circuit Judges, and COFFRIN, District Judge.*

COFFRIN, Chief District Judge.

Defendant was charged by indictment with five violations of the gun control laws and was convicted, upon a jury verdict, of four of those five charges. Defendant appeals from the convictions as to Counts Three and Five only. Count Three charged defendant with transporting 12 firearms interstate without the requisite licenses in violation of 18 U.S.C. § 922(a)(3) (1976). Count Five charged defendant with transporting 45 firearms interstate without the requisite licenses, also in violation of 18 U.S.C. § 922(a)(3) (1976). Section 922(a)(3) is contained in Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 226, amended by the Gun Control Act of 1968, 82 Stat. 1214, now appearing as 18 U.S.C. § 921 *et seq.* (1976 ed. and Supp. V.) (hereinafter "the Act"). It provides, in pertinent part,

> It shall be unlawful for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the

* Honorable Albert W. Coffrin, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

State where he resides ... any firearm purchased or otherwise obtained by such person outside that State ...

Defendant does not dispute that he was not a licensed importer, manufacturer, dealer or collector of firearms. His sole contention is that by virtue of his dual residency in both the state in which he purchased the guns and the state into which he transported the guns, he is exempt from the proscriptions of the statute.

■ In determining the scope of the statute and the persons to whom it is applicable, we must consider not only the plain meaning of the language used in the statute, but also must interpret that language in light of the purposes Congress sought to serve by promulgating the relevant laws. *Dickerson v. New Banner Institute, Inc.,* —— U.S. ——, 103 S.Ct. 986, 994, 74 L.Ed.2d 845 (1983); *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). In a number of cases, the United States Supreme Court has recognized and given weight to the broad prophylactic purposes of the Act:

> When Congress enacted [18 U.S.C. § 921 *et seq.*] it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest .... The principal purpose of federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' *Dickerson,* 103 S.Ct. at 994; *Huddleston v. United States,* 415 U.S. 814, 824 [94 S.Ct. 1262, 1268, 39 L.Ed.2d 782] (1974), quoting S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968).

*See also Barrett v. United States,* 423 U.S. 212, 220–221, 96 S.Ct. 498, 503, 46 L.Ed.2d 450 (1976). In discussing the congressional intent and legislative purpose of the gun control laws, the Supreme Court in *Dickerson* expressly recognized that the licensing provisions of the Act are "particularly important because Title IV and federal gun laws generally funnel access to firearms almost exclusively through dealers." 103 S.Ct. at 995.

■ Defendant relies on a Seventh Circuit case to support his contention that, despite the purposes of the Act as outlined above, his conduct of transporting 57 firearms from New York to Florida without the requisite licenses was not intended by Congress to be proscribed by the Act because he maintains a residency in each of those states. In *United States v. One Heckler-Koch Rifle,* 629 F.2d 1250 (7th Cir. 1980), a forfeiture action, the Seventh Circuit considered a similar dual-residency exemption claim in the context of a defendant who had borrowed a firearm from a resident of Florida and who flew to his home in Chicago with the item, which he properly declared he was carrying with him. The defendant had only the one firearm and there is no indication that he obtained it illegally or intended it for resale or unlawful purposes. In response to defendant's attempt to exempt himself from the statute by establishing residency in Florida as well as Chicago, the District Court stated: "[a] literal reading of [§ 922(a)(3)] reveals that the violation lies in *transporting into* a state of residence a firearm purchased *outside that particular State." Id.* at 1256. (Emphasis in original). The Circuit Court, while recognizing that the District Court's construction of the statute "is certainly a reasonable one" and that the defendant's conduct "[fell] within the literal sweep of § 922(a)(3)", opined that the provision "was not intended to apply to transportation of a firearm between two states by a person with residency in both states." *Id.* at 1256. The court relied upon the legislative history in making its determination, particularly upon some remarks made by Representative Corman and a letter from the Attorney General in response to an inquiry from Congress. The Attorney General's letter stated that the statute would not be applicable in

a situation where a congressman lawfully obtained a firearm in D.C. where he had a temporary residence, and then transported it to his home state, where he also resided.

With respect to the letter from the Attorney General and the comments by Representative Corman relied upon by the Seventh Circuit in *One Heckler-Koch Rifle,* we are persuaded that they do not support that theory of exemption of this particular defendant on these facts. The opinion of the Attorney General by its words is limited to the very specific circumstances considered therein and we do not regard it as particularly enlightening with respect to the circumstances presented in the instant case. In his comments discussing residency, Corman noted only that a person who had more than one residence could *lawfully purchase* a gun in either of those places of residency; he said nothing about the transportation of arms outside the state of purchase. Furthermore, Corman went on to emphasize

So we ought not to confuse a person's ability to buy a gun in his place of temporary residence with *the attempt to frustrate the purpose of this bill,* which is to prevent a person from going outside the State of residence to buy a gun and then taking it back to his own State of residence.

(Emphasis added). *One Heckler-Koch Rifle,* 629 F.2d at 1256, citing 114 Cong.Rec. 22785 (July 23, 1968) (remarks of Rep. Corman).

Finally, in construing the statute so as not to prohibit the transportation of a firearm obtained in one state of residence to another, the court stated:

We regard it as consistent with the Congressional purpose to restrict interstate firearms traffic without unduly interfering with the legitimate uses of firearms by law abiding citizens. *Id.* at 1257.

To exempt the defendant before this court from the proscriptions of § 922(a)(3) of the Omnibus Crime Control and Safe Streets Act, as amended by the Gun Control Act, would not be consistent with the Congressional purpose as interpreted by the cases and as indicated in the legislative history of the Act. Defendant trafficked in a large number of firearms, buying and selling them illicitly with cash payments and delivery made in such places as motel parking lots. Although he claimed the guns were for his security guard business, it is uncontroverted that he purchased and transported them outside his state of residence for the purpose of resale at a profit. This objective was achieved through a variety of third parties with questionable backgrounds, and, ultimately, attempted through undercover agents. All of this large scale trafficking was done, needless to say, without the requisite licenses. Defendant's actions were designed to avoid the access and control limitations which are the main objectives of the gun control laws.

The defendant in *One Heckler-Koch Rifle,* contrary to the defendant herein, was not trafficking in guns but had lawful possession of only one firearm. He did not attempt to circumvent the laws, for example by not declaring his possession of the firearm, and there is nothing indicating his was the type of possession which Congress wanted to regulate via the Act.

The actions of the present defendant, however, fall squarely within the scope of the Act. In *Dickerson,* the United States Supreme Court unequivocally stated that "Title IV also makes it unlawful to engage in the business of importing, manufacturing, or dealing in firearms without a license ..." 103 S.Ct. at 988. The Second Circuit has also recognized that the Act carries out its legislative purpose of restricting access to firearms in order to prevent unlawful uses of them by permitting interstate shipment only between licensed parties. *United States v. Jones,* 481 F.2d 653, 655 (2d Cir. 1973). Title IV is a "carefully constructed package of gun control legislation ... Congress knew the significance and meaning of the language it employed." *Dickerson,* 103 S.Ct. at 995; *Scarborough v. United States,* 431 U.S. 563, 570, 97 S.Ct. 1963, 1966–67, 52 L.Ed.2d 582 (1977) quoting *Barrett v. United States,* 423 U.S. at 217, 96 S.Ct. at 501.

The Act is replete with specific exceptions which permit limited types of possession for lawful purposes. *See, e.g.,* § 922(a)(2)(A–C). There is no such specific exception such as defendant suggests which can be garnered from a plain reading of the language of the statute. A rule giving effect to the defendant's interpretation of § 922(a)(3) would seriously hamper the effective enforcement of Title IV; all one would need to do to circumvent the plain meaning of the statute would be to establish residency in two states between which he intended to "run guns." Such an interpretation would, as Representative Corman was careful to warn against, frustrate the purpose of the bill. We therefore hold that the defendant's actions fall squarely within the literal sweep of § 922(a)(3). To the extent that *One Heckler-Koch Rifle* is factually disparate, it is distinguishable. The convictions are affirmed.