Thomas C. **WEBSTER**, Plaintiff,

v.

**ALLSTATE INSURANCE
COMPANY**, Defendant.

**Civ. A. No. C–85–0756–L(M).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Dec. 17, 1986.

Marvin L. Coan, Louisville, Ky., for plaintiff.

Jon L. Fleischaker and Sharon L. Conyer, Wyatt, Tarrant & Combs Citizens Plaza, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

MEREDITH, District Judge.

This matter is presently before the Court on the plaintiff's motion to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the defendant's motion for a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the plaintiff's motion for an order compelling production of documents pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. This action was removed from state court pursuant to Title 28, United States Code, Section 1441 on the basis of diversity of citizenship under Title 28, United States Code, Section 1332. The

law of Kentucky is applicable. For the reasons set forth below, the motion of the defendant for summary judgment will be granted.

On July 3, 1985, the plaintiff, Thomas C. Webster, filed a verified complaint in the Jefferson Circuit Court against the defendant, Allstate Insurance Company, arising out of the July 9, 1984, termination of his employment. The action was removed on a timely basis by Allstate to this Court.

Webster first began working for Allstate as a claims adjuster in Allstate's Evansville, Indiana, office in February of 1965. He was subsequently promoted to Casualty Claims Supervisor and in 1970 he accepted a position as an Evaluator in Allstate's Louisville offices. In 1971, Webster's Evaluator position was eliminated and he became a Staff Claims Representative. He continued in this position receiving high performance ratings through the end of 1980. In August of 1980, Allstate switched to a new system of handling insurance claims known as the "self-sufficiency unit" or "SSU." Under this system, Webster, who had previously specialized in handling bodily injury claims, was now required to handle all types of claims. Webster has alleged that beginning in 1981, Allstate, acting through George Clark, Webster's immediate supervisor, and other agents undertook a three and one half year course of conduct designed to discredit Webster and his job performance so as to justify his termination.

Webster's original complaint alleged the following causes of action: (1) breach of an implied covenant of good faith and fair dealing owed pursuant to an implied contract of employment; (2) a tort claim of wrongful discharge and the intentional infliction of emotional distress in violation of public policy and the Federal and Kentucky Constitutions in retaliation for Webster's activities in attempting to organize a union; and (3) outrageous conduct. Webster has since tendered an amended complaint withdrawing any claims under the federal or state constitutions and adding a tort claim of wrongful discharge due to his termination in violation of public policy as retaliation for the refusal to participate in a criminal act. In his response to the defendant's motion for summary judgment, Webster concedes that the primary jurisdiction of the National Labor Relations Board and the doctrine of preemption would prevent the Court from considering any claims that Webster's employment was terminated in contravention of public policy due to Webster's union organizing activities.

In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court in dispensing a grocery list of reasons why leave to amend a complaint may be denied ended with "futility of amendment." In *Collyard v. Washington Capitals*, 477 F.Supp. 1247, 1249 (D.Minn. 1979), the court said a motion to amend could be denied if it could be defeated by a motion for summary judgment. Therefore, for the purposes of the motions presently pending, the most practical approach would be to treat Webster's tendered amended complaint as if allowed and then consider whether it can survive Allstate's motion for summary judgment.

The burden is on the party moving for summary judgment to show the absence of a genuine issue as to any material fact, and for these purposes the evidence, including all materials properly on file and thus properly before the Court, must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63–64 (6th Cir.1979). Where genuine issues of material fact are not in dispute and purely legal questions are at issue, then the matter is ripe for summary judgment, which may be granted if the movant shows he is entitled to judgment as a matter of law. *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir.1976).

■ Kentucky, with limited exceptions, continues to adhere to the "terminable at-will" doctrine in regard to employment contracts. *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky.1984). Webster, however, contends that his case falls within the public policy exception first recognized in *Firestone* and as narrowly defined in

*Grzyb v. Evans,* 700 S.W.2d 399 (Ky.1985). Webster contends that his "real downfall and his ultimate termination by Allstate can be traced to his refusal to participate in a criminal act at the direction of George Clark in May, 1982."

The facts concerning this incident as stated by Webster, and he is the only person with a clear recollection of the incident, are as follows: Webster was working an insurance claim which involved the total loss of the insured's vehicle. In settlement of the claim, and in consideration for the value of the vehicle received, the insured was to transfer the vehicle's title to Allstate. The transfer documents contained an odometer statement attesting to the actual mileage on the vehicle at the time of the transfer. Webster had sent the insured an odometer statement for the insured's signature with the incorrect mileage filled in. The insured had returned the statement unsigned and Webster had then sent the insured a corrected statement for his signature. Before the corrected statement was returned, Webster was approached by his immediate supervisor, George Clark, who told Webster that he wished to close out the file. When Clark learned that Webster was waiting on a corrected and signed odometer statement, Clark told Webster to prepare a statement with the correct mileage and that he would see that it was signed. When Webster asked Clark how he would do that, Clark indicated that he would simply have someone in the office sign the insured's name to the statement. Webster refused to follow Clark's instructions and after Clark conferred with his supervisor, he returned the file to Webster saying "You were right on that one." According to Webster, Clark's attitude towards Webster began to change after this incident, and Webster began to receive unfavorable evaluations leading to his termination from employment three and one half years later. (Webster Depo. pp. 17–25).

In determining whether a public policy exception to the employment at will doctrine applies three limitations are controlling. They are:

"1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact."

*Grzyb,* 700 S.W.2d at 401.

Webster contends that what Clark proposed to do would have constituted a violation of Kentucky Revised Statute 515.-030(1) and that if Webster had assisted Clark then Webster would have been guilty of criminal facilitation. Kentucky Revised Statute 516.030(1) provides in relevant part as follows:

"A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be or which is calculated to become or to represent when completed: (b) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public employee(.)"

To borrow from Justice Palmore "In the homely idiom of a colorful West Kentucky lawyer long gone but not forgotten, 'that dog won't hunt.'" *Bryan Brothers Packing Co. v. Garrard,* 386 S.W.2d 469, 474 (Ky.1965). As Allstate points out, the statute requires the intent to defraud, deceive or injure another. The insured had already received his payment for the car. The car was being transferred to Allstate in consideration of said payment. Webster does not allege that Clark requested that anything but the correct odometer statement be given. The fact that Allstate might subsequently transfer the car to another individual would have no bearing, since Allstate would be required to execute an odometer statement in its own name. KRS 190.300. While it probably was the better part of wisdom for Clark's supervisor to tell Clark to back off, as apparently the supervisor did, Webster simply has failed to establish that he was asked to participate in a criminal act. In *Grzyb* the Kentucky Supreme

Court indicated the public policy exceptions of *Firestone* were to be narrowly defined. Understandably the Kentucky courts are going to be slow to interfere in the employer-employee relationship especially in a case such as this one where, even if an indiscreet command was given, it was corrected in the give and take of the workplace.

■ Webster also contends that Allstate, in terminating his employment, violated an implied covenant of good faith and fair dealing. Webster would have the Court hold that this implied covenant of good faith and fair dealing arose whether or not he was a terminable at will employee. In *Wyant v. SCM Corporation,* 692 S.W.2d 814, 816 (Ky.Ct.App.1985), an employee bringing a wrongful discharge action argued "that his seventeen-year tenure imposes an implied duty of good faith dealing upon [the employer]." The Court of Appeals said "the problem with [the employee's] position is that terminable at will employment in Kentucky may be ended at any time, with or without cause." *Id.* The Court continued to bolster its decision by stating that the employee had failed to demonstrate his employer's bad faith by even a scintilla of reliable, probative evidence, but the decision indicates that the Kentucky courts are not going to find an implied covenant of good faith and fair dealing in the absence of an express contract as was present in *Crest Coal Company v. Bailey,* 602 S.W.2d 425 (Ky.1980).

■ Webster makes a detrimental reliance argument based on the fact that he moved to Louisville relying on company representation that the move would enhance his career opportunities. Once in Louisville, he continued to receive favorable evaluations and salary increases causing him to rely on the promises of career advancement and continued employment, staying with Allstate to "work his way up." The Court doubts that the present day Kentucky courts would take as hard a line as was taken in *Stanley v. Kentucky Utilities Company,* 233 Ky. 688, 4 S.W.2d 732 (1928). In *Stanley* the plaintiff resigned gainful employment to work for the defendant-employer only to be told on the first day that his services were not needed. The Kentucky court said that having bargained for a terminable at will contract, the plaintiff could not complain when it was terminated on the first day. But this Court is of the opinion that no Kentucky court would find that Webster had relied on Allstate's promises to his detriment having continued in Allstate's employ for 14 years after his move.

■ Webster has also alleged a cause of action for outrageous conduct. In *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984), the Kentucky Supreme Court recognized the tort of outrageous conduct causing severe emotional distress. To prevail, Webster would have to show conduct amounting to "a deviation from all reasonable bounds of decency [which] is utterly intolerable in a civilized community." *Id.* at 250. In *Firestone,* the court does say that a cause of action for a wrongful discharge "is but another facet of compensation for outrageous conduct as described in *Restatement (Second) of Torts,* Sec. 46 (1965)...." 666 S.W.2d at 733. The *Firestone* court, however, continued to say:

"Employers as a group have a legitimate interest to protect by having the cause of action for wrongful discharge clearly defined and suitably controlled. Therefore, we adopt this further rule from the decision of the Wisconsin Supreme Court in *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983), *supra:* 'The determination of whether the public policy asserted is a well-defined and fundamental one is a issue of law and is to be made by the ... court.' 335 N.W.2d at 841." *Id.*

It is not clear from the Kentucky opinions in this area of the law to what extent the tort of outrageous conduct and the tort of wrongful discharge in contravention of public policy overlap, or, even whether the latter possibly preempts the former in the employment field. The workplace is full of stressful situations and personalities which are at odds. Most people who find their jobs terminated are personaly outraged and few people on the unemployment rosters

are not distressed. But clearly it is going to take something more than bad manners or friction between an employer and his supervisor to constitute outrageous conduct. Webster would rely on the odometer incident here but, even if it is to be believed that this incident led to his discharge three and one-half years later, as this Court has already indicated, this would not amount to a discharge in contravention of a well-defined and fundamental public policy. Absent anything more, Webster's claim for outrageous conduct must fail.

Finally, Allstate raises an issue that may well be the crux of this case. Allstate contends that a contract of employment in which the term is fixed by a "for cause" provision must be express and cannot be implied by the court. In *Shah*, the court said "We are not relegated to peripheral inferences to determine whether the parties intended ASRC to have the right to fire Shah without cause after he survived the probationary period. The parties contracted specifically against such firing." 655 S.W.2d at 491. Later the court clarified its position saying:

"We join a number of other jurisdictions which hold that parties may enter into a contract of employment terminable only pursuant to its express terms—as 'for cause'—by clearing stating their intention to do so, even though no other considerations than services to be performed or promised, is expected by the employer, or performed or promised by the employee." *Id.* at 492.

Webster, in his complaint, has only alleged the existence of an implied contract. Nowhere in the file has Webster attempted to prove the existence of an express contract of employment. In response to Allstate's motion for summary judgment Webster states in his reply brief "Plaintiff does not contend here that he was provided with an express contract for a period of employment." *See United States v. One Heckler–Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir.1980) (admission in brief functionally equivalent to admissions on file). While in both the *Shah* and *Firestone* cases, it is evident that the Kentucky courts are at-

tempting to soften the harshness of the terminable at will doctrine as it has been applied in the past, it is not evident that the Kentucky courts would relax this doctrine to the extent that Webster would require. Summary judgment will be granted.

Having determined that Webster's tendered amended complaint could not withstand a motion for summary judgment, the motion to amend will be denied. Also, Webster's Rule 37(a) motion will be denied as moot. An appropriate order will be entered as of this date.