**Rudolph O. SCHNEIDER, Jr. and Steven Vitale, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 71–1393, 71–1572.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1972.

Decided April 12, 1972.

Rehearing Denied May 18, 1972.

Dewey S. Godfrey, Jr., St. Louis, Mo., Claude Hanks, Robert L. Officer, Clayton, Mo., for appellants.

Thomas M. Vockrodt, Harry L. Strachan, Sp. Attys., Dept. of Justice, St. Louis, Mo., Henry E. Petersen, Acting Asst. Atty. Gen., Sidney M. Glazer, Robert E. Lindsay, Attys., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The defendants were convicted of operating an illegal gambling business in violation of 18 U.S.C. § 1955.[1] That section was originally part of Title VIII of the Organized Crime Control Act of 1970, Pub.L.No. 91–452, 84 Stat. 922, et seq. On appeal, the defendants challenge the constitutionality of the statute as applied to them.

Convictions under § 1955 do not require a showing in each individual case that the gambling activities of a particular defendant have affected commerce, even though Congress relied on the commerce clause in enacting the legislation. See, 18 U.S.C. § 1511, note. In this case, a showing has not been made. The defendants argue that in the absence of such a showing, a conviction under the statute cannot be constitutionally sustained. The Supreme Court, however, has rejected a similar contention in Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). There, the Court upheld Congress's power to control local "loan sharking," indicating that where the defendant's activities are within a regulated class of activities and where that class of activities is within the reach of federal power under the commerce clause, there is no need to show, in each individual case, that the defendant's activities affected commerce. See, United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970); White v. United States, 399 F.2d 813 (8th Cir. 1968).

---

1. Section 1955, 18 U.S.C., states in part:
   "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
   "(b) As used in this section—
   "(1) 'illegal gambling business' means a gambling business which—
   "(i) is a violation of the law 'of a State or political subdivision in which it is conducted;
   "(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

   "(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
   "(2) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy bolita or numbers games, or selling chances therein.
   "(3) 'State' means any State of t⟩ United States, the District of Col⟨ bia, the Commonwealth of Puerto and any territory or possession United States."
   The defendants were also c⟨ conspiring to violate § 19⟨

Here, Congress has found that illegal gambling affects interstate commerce. Organized crime uses money obtained through illegal gambling to infiltrate legitimate businesses and labor unions, to harm investors and competing businesses, and to corrupt the democratic process. See, 18 U.S.C. § 1511, note; 18 U.S.C. § 1961, note. Gambling, then, like loan sharking, " * * * in its national setting is one way organized interstate crime * * * syphons funds from numerous localities to finance its national operations." Perez v. United States, *supra*, 402 U.S. at 157, 91 S.Ct. at 1363. There is a sufficient rational basis for this conclusion,[2] and the means chosen to control the evil are reasonable. See, White v. United States, *supra*, 399 F.2d at 824.

█ In this case, there is no dispute that the defendants' activities were within the class of activities controlled by § 1955. Thus, we think the statute represents a constitutional exercise of power under the commerce clause, and that it is constitutional as applied to these defendants.

█ An additional constitutional problem is suggested because § 1955 prohibits gambling businesses which are in violation of the law of the state or political subdivision in which they are conducted. As a result, the effect of the statute may not be uniform throughout the nation. Gambling activity conducted in one state may be a federal offense, while the same activity in another state may not be a federal offense. Even within a state, some forms of gambling may be federal offenses while other forms of gambling may not be. In United States v. Aquino, 336 F.Supp. 737 (E.D.Mich.1972), the District Court rejected the contention that § 1955's potential lack of uniform national effect deprived the defendants of the equal protection of the laws. We, too, find that the basic concepts of equal protection have not been violated by 18 U.S.C. § 1955. See generally, United States v. Synnes, 438 F.2d 764, 771 (8th Cir. 1971), overruled in part, United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

The Supreme Court has stated that there is no requirement of national uniformity when Congress exercises its power under the commerce clause. Secretary of Agri. v. Cent. Riog Refining Co., 338 U.S. 604, 616, 70 S.Ct. 403, 94 L.Ed. 381 (1950) (upholding the Sugar Act of 1948, 7 U.S.C. § 1100 et seq., which, it was argued, imposed certain sugar quotas for offshore areas such as Puerto Rico but not for mainland refineries); Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441 (1939) (upholding the Tobacco Inspection Act, 7 U.S.C. § 511, which provided that in case the Secretary of Agriculture was unable to inspect all market areas, he should inspect those areas where the greatest number of growers could be served, with the result that some markets would be free to operate without inspection while others, even within the same state, would have to be inspected); Clark Distilling Co. v. Western Md. Ry. Co., 242 U.S. 311, 327, 37 S.Ct. 180, 61 L.Ed. 326 (1917) (upholding the Webb-Kenyon Act, 27 U.S.C. § 122, which prohibited transportation of liquor from

---

2. See, the President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, at 5, 34, 35, 188–191 (1967); Task Force on Assessment: The President's Commission on Law Enforcement and Administration of Justice, Task Force Report; Crime and Its Impact—An Assessment, at 52, 53 (1967); Task Force on Organized Crime: The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Organized Crime (1967);

116 Cong.Rec. 590, 591 (1970) (remarks of Senator McClellan); 116 Cong.Rec. 601 (1970) (remarks of Senator Hruska); 116 Cong.Rec. 603–606 (1970) (remarks of Senator Allott). Several District Courts have upheld the constitutionality of 18 U.S.C. § 1955. United States v. Aquino, 336 F.Supp. 737 (E.D. Mich.1972); United States v. Politi, 334 F.Supp. 1318, 1322 (S.D.N.Y.1971); United States v. Harris, 332 F.Supp. 315 (W.D.Tex.1971).

one state into another to be used in violation of the laws of that state).

The Supreme Court has also approved, in a variety of contexts, the incorporation of state laws into federal statutes. Kentucky Whip & Collar Co. v. Illinois C. R. Co., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270 (1937) (upholding the Ashurst-Sumners Act, ch. 412, 49 Stat. 494, which prohibited the transportation of convict-made goods into any state where the goods are intended to be received, possessed, sold or used in violation of state law); Clark Distilling Co. v. Western Md. Ry. Co., *supra.* See also, United States v. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958) (upholding the Assimilative Crimes Act of 1948, 18 U.S.C. § 13, which made applicable to a federal enclave subsequently enacted criminal laws of the state in which the enclave is situated), and see the cases cited therein.

This Court has held constitutional statutes whose restrictions on gambling were dependent on state law. " * * * [T]he fact that a federal criminal statute is based in part upon conduct proscribed by state law does not violate due process simply because of variations in the law of the several states. * * *" Spinelli v. United States, 382 F.2d 871, 890 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (upholding 18 U.S. C. § 1952, which prohibits traveling in interstate commerce to promote certain illegal activity, including gambling, which is in violation of the laws of the state in which it occurs). See, Nilva v. United States, 212 F.2d 115 (8th Cir. 1954), cert. denied, 348 U.S. 825, 75 S. Ct. 40, 99 L.Ed. 650 (1954) (upholding 15 U.S.C. § 1171–77, which prohibits the transportation of gambling devices into any state, but provides that a state may exempt itself from the act); Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963) (upholding 18 U.S.C. § 1952).

We think that the principles applied to those cases are equally applicable to the present case.

Affirmed.