UNITED STATES of America, Appellee,

v.

Harold Edward BURTON, Appellant.

No. 72–1412.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1973.

Decided March 19, 1973.

---

Edward W. Mullen and Deacy & Deacy, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, District Judge.

The appellant before us was tried by jury and convicted of the offense of possession of firearm traveling in and affecting interstate commerce in violation of 18 U.S.C.A. App. § 1202(a)(1).

The facts of this case are not in dispute. Briefly, what happened was that the appellant purchased a ticket at the Kansas City Municipal Air Terminal for Minneapolis. At the same time he checked two bags for the flight. The Braniff ticket agent became suspicious. Not only did the appellant fit what is called the "highjacker's profile" but the weight distribution of one of his bags seemed unusual. Obtaining a skeleton key, the agent opened the bag and found therein a loaded .357 magnum Smith & Wesson revolver. The U. S. Marshal on duty at the terminal was notified and when the appellant presented himself for the flight he was taken into custody and the weapon and ammunition seized. The District Court's exhaustive opinion, 351 F.Supp. 1372, sets out the facts in more detail.

---

* Hon. Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

Pre-trial motion was made for the suppression of the gun, its ammunition, and certain other evidentiary exhibits, on the ground that they were the products of an unlawful search. The denial of such motion, D.C., 341 F.Supp. 302, is one of the grounds for appeal.

■ In this aspect of the case it is appellant's theory that the actions of the Braniff agent amounted, in legal effect, to an illegal search by an agent of the Government. "By virtue," he asserts, "of the broad authorities and powers of the F.A.A. [Federal Aviation Administration] over air lines, the resultant searches, including the one in question here, are inextricably intertwined with Governmental action and the directives of the F.A.A. disseminated to the air lines as shown by the evidence." The directives relied upon are not cited to us and our independent research has disclosed none warranting the conclusion asserted.

Appellant urges that Corngold v. United States, 367 F.2d 1 (9th Cir. 1966), is applicable precedent. *Corngold*, however, involved a situation in which the carrier's agent opened a package only because the government agent asked him to do so and, indeed, participated in the search. United States v. Lopez, 328 F. Supp. 1077 (E.D.N.Y.1971), also relied upon by appellant, is even more remote from our facts. There the search was conducted by Federal agents. Here the Braniff agent conducted the search entirely on his own, no government agent so requesting or even being involved in the matter until after the carrier's agent discovered that appellant had delivered a loaded gun to the carrier for transportation. Gold v. United States, 378 F.2d 588 (9th Cir. 1967), is more in point, confirming the essentially private character of the carrier's search. The issue of governmental search here is without merit.

■ Appellant also complains that the act violates his rights under the Fifth Amendment to the Constitution and Article 4, Section 2 thereof. He bases this argument, without case support, upon the theory that the act denies those purportedly subject to it of the equal protection of the laws, in that state laws differ in their punishments for prescribed offenses, an act possibly being a felony in one state, though only a misdemeanor in another. The argument lacks merit. We have held heretofore that the Congress had a rational basis for finding that the receipt, possession or transportation of a firearm by felons affected commerce. United States v. Synnes, 438 F.2d 764 (8th Cir. 1971), vacated on other grounds; United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). See, also Cody v. United States, 460 F.2d 34 (8th Cir. 1972). In this situation, with an established nexus under the Commerce Clause, there is no requirement of national uniformity, Schneider v. United States, 459 F.2d 540 (8th Cir. 1972), citing Clark Distilling Co. v. Western Md. Ry. Co., 242 U.S. 311, 327, 37 S.Ct. 180, 61 L.Ed. 326 (1917). Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441 (1939); Secretary of Agri. v. Cent. Roig Refining Co., 338 U.S. 604, 616, 70 S.Ct. 403, 94 L.Ed. 381 (1950). The Supreme Court has also approved, in a variety of contexts, the incorporation of state laws into federal statutes. Schneider v. United States, *supra*, and cases therein cited. These considerations dispose, as well, of appellant's Article 4 argument, that the statute inhibits his right to travel from one state to another. The citizen's right to travel is subordinate to the Congressional right to regulate interstate commerce when the travel involves the use of an interstate facility for illicit purposes. Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913). We note, also, that the conviction here was on the basis of the use of an interstate facility, rather than concerning interstate travel as such. There is no question that Congress may proscribe the use of an interstate facility for illicit purposes. Turf

**472**

Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963); United States v. Gerhart, 275 F.Supp. 443 (S.D.W.Va. 1967).

██ Finally, appellant complains of the indictment. The Count before us states:

COUNT 1

"That on or about the 11th day of January, 1972, at Kansas City, Missouri, in the Western District of Missouri, HAROLD EDWARD BURTON, having been previously convicted of a felony, an offense punishable by imprisonment exceeding one year, to wit, assault with intent to kill, in the Circuit Court of Jackson County, State of Missouri, did wilfully and knowingly possess and transport in interstate commerce from Kansas City, Missouri, to Minneapolis, Minnesota, a certain firearm, to wit: a loaded .357 magnum Smith & Wesson Revolver, Serial No. S–283727, all in violation of Title 18 Appendix, Section 1202(a)(1) United States Code."

The appellant asserts that there was no evidence to support the transportation alleged, and also that preamble of the count reciting the Kansas City venue is contradictory to the charge made. It is well established, however, that an article delivered to a common carrier for shipment to another state is in interstate commerce from the time of its delivery to the carrier until it reaches the consignee. United States v. May, 419 F.2d 553 (8th Cir. 1969); United States v. Jones, 446 F.2d 48 (4th Cir. 1971). See, also, United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L. Ed. 2010 (1947). Such was the showing here and the jury was properly instructed thereon. We find no contradiction between the allegation in the indictment that the offense occurred at Kansas City and the allegation that appellant did possess and transport a firearm in interstate commerce. There was, moreover, no possibility that the appellant was misled in any way as to the charge brought against him by the indictment.

The conviction is affirmed.