[Crim. No. 26806. Second Dist., Div. One. Dec. 31, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD GOODYEAR, Defendant and Appellant.

COUNSEL

Robert M. Sanger, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANSON, J.—

### INTRODUCTION

Defendant Richard Goodyear (hereinafter defendant) appeals from a judgment entered on a plea of guilty to possession of amphetamines for the purpose of sale in violation of Health and Safety Code section 11378 on the ground that his motion to suppress under Penal Code section 1538.5 was improperly denied.

### THE CASE

The reporter's transcript reflects the following: On the morning of October 8, 1975, at approximately 7:50 a.m., Michael Lomax, a customer service agent employed at United Airlines, while on duty in the lobby of Los Angeles International Airport, was approached by defendant who announced that he was late for his flight and requested Mr. Lomax to check in his bag. Mr. Lomax checked defendant's ticket and noticed that he was booked on an 8 a.m. flight to Milwaukee. He informed defendant that because the bag was so small he could carry it on board the plane. He further advised defendant that he could not guarantee that the bag if checked through would get on the same plane; it might go on a later flight. Defendant nonetheless told Lomax to check the bag. Mr. Lomax did so; he marked "V.S." ("voluntary separation") on the baggage tag; and handed defendant the claim check and directed him toward the plane.

Mr. Lomax became suspicious of defendant for several reasons: (1) defendant was not as excited or nervous as late passengers usually are;

(2) defendant wanted to separate himself from his luggage even though Lomax told him it might not get on the same plane, while most late passengers would rather carry a small bag aboard the plane; (3) defendant apparently wished to avoid passing through the magnetometer and/or X-ray machine (located some 50-60 yards away) with the bag; and (4) defendant fit an airport anti-hijacking profile. Lomax feared there might be a weapon or explosive device in the bag; he was especially concerned because an explosion had recently occurred in the Pan American building at Los Angeles International Airport.[1]

On the basis of these suspicions, Lomax opened the bag. Probing beneath the clothing, Lomax felt a plastic bag. He thereupon looked into the luggage and yellow trashbag; when he pressed it, he observed that it contained a large quantity of round pills. He took the bag to his supervisor, Mr. Fred Fahy, and showed him its contents. Mr. Fahy looked into the bag, suspected the pills might be narcotics, called the police, and had Mr. Lomax obtain defendant's name and seat number.

Officer Donald E. Vanover of the Los Angeles Police Department, stationed at Los Angeles International Airport, arrived shortly thereafter. The piece of luggage was on the table. The testimony is unclear as to whether the bag was open or whether Mr. Lomax or Mr. Fahy opened it for the officer, or whether the officer himself opened the luggage and exposed its contents. In any event, Officer Vanover observed a pink bag inside the trashbag and recognized the pills contained therein as amphetamines or "mini-bennies." Officer Vanover accompanied by Mr. Lomax then went to the plane and placed the defendant under arrest. He searched the defendant and discovered marijuana on his person.

The clerk's transcript reflects the following: Defendant was charged in count I with possession of amphetamines for purpose of sale (Health & Saf. Code, § 11378) and in count II with possession of marijuana (Health & Saf. Code, § 11357). Count II was dismissed on prosecution motion. Defendant entered a plea of guilty to count I after his motion to suppress under Penal Code section 1538.5 was denied. Proceedings were suspended and defendant was granted probation for three years on condition he spend 180 days in the county jail, with credit given for the two days he spent in custody following his arrest. Defendant is presently out on bail pending appeal.

---

[1]On August 6, 1974, a bomb thought to be planted in a locker near the Pan American Airlines check-in counter at Los Angeles International Airport exploded, killing two persons outright and injuring 36 others. (Los Angeles Times, Aug. 7, 1974, pt. 1, p. 1.)

## ISSUE

On appeal defendant contends that the contraband (approximately 55,000 mini-bennies) was inadmissible because it was acquired as the result of an illegal search of his luggage and that his motion under Penal Code section 1538.5 was improperly denied.

## DISCUSSION

We conclude that Michael Lomax's search of defendant's luggage was lawful and Officer Vanover's conduct was reasonable and proper in all respects.

### As to Mr. Lomax's Conduct:

The "exclusionary rule" does not apply to evidence obtained in a search conducted by a private citizen not acting as a government agent. (See *Dyas* v. *Superior Court,* 11 Cal.3d 628, 632 [114 Cal.Rptr. 114, 522 P.2d 674]; *People* v. *McKinnon,* 7 Cal.3d 899, 912 [103 Cal.Rptr. 897, 500 P.2d 1097]; *People* v. *Scott,* 43 Cal.App.3d 723, 726 [117 Cal.Rptr. 925].)

In the instant case the evidence supports the trial court's implied finding that Lomax's search was essentially of a private nature and that he was not acting as a state agent in accordance with the criteria set forth by the California Supreme Court in *People* v. *McKinnon, supra.* Here, Lomax, employed by United Airlines for five and one-half years, was not hired and paid by police to search packages in hopes of finding evidence; he was not participating in a joint operation with law enforcement officers to obtain incriminating evidence against defendant nor was he acting at the express direction or request of law enforcement officers. There was no police participation until after Mr. Lomax, checking to insure there were no weapons or explosives in the suitcase, discovered the 55,000 mini-bennies, which is insufficient to transform him into a state agent.

In *United States* v. *Burton* (8th Cir. 1973) 475 F.2d 469, the ticket agent became suspicious of a passenger who checked in two bags because he fit the "hijacker's profile" and the weight distribution of one bag seemed unusual. The ticket agent opened the bag with a skeleton key, found a loaded revolver, and notified a United States Marshall who subsequently arrested the passenger and seized the weapon. The court held that the search was essentially of a private character. Following *Burton,* the court

in *United States* v. *Wilkerson* (8th Cir. 1973) 478 F.2d 813, 815 declared: "[S]earches of luggage [for guns or explosives] by airline employees are private searches that are invulnerable to fourth amendment attack so long as the searches are conducted by the carrier for its own purpose and without the instigation or participation of government officers." In *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 536-537 [18 L.Ed.2d 930, 940, 87 S.Ct. 1727], the court stated: "Unfortunately, there can be no ready test for determining the reasonableness other than by balancing the need to search against the invasion which the search entails. . . . [T]he public interest demands that all dangerous conditions be prevented . . . ."

In the case at bench Mr. Lomax became suspicious of defendant not only because of his unusual behavior but because he fit the federal anti-hijacking profile formerly used in airport security. His decision to open the bag was based on company guidelines to protect the public and his own intuition. There were nc federal regulations or police department directives mandatory that he inspect checked-in luggage. The decision, being his own, is not subject to Fourth Amendment restraints. (See *United States* v. *Ogden* (9th Cir. 1973) 485 F.2d 536, 538.) Clearly, the alleged infringing of defendant's constitutional rights pales when balanced with the "public interest" of insuring that innocent citizens, airborne and cruising at thousands of feet elevation, be free from the dangerous conditions of the possibility of weapons or explosives being placed in checked-in baggage.

*As to Officer Vanover's Conduct:*

We hold that Officer Vanover was not required to obtain a search warrant before examining defendant's luggage. "Airport searches are singularly unsuited to the warrant procedure." (*People* v. *Hyde,* 12 Cal.3d 158, 168 [115 Cal.Rptr. 358, 524 P.2d 830].) The exigencies of the situation at bench obviate the necessity for a warrant. Here, the piece of luggage was an easily movable object—to hold it while waiting for a warrant would also constitute a seizure. The plane with defendant aboard was due to leave in less than 10 minutes. We hold that under such circumstances, a warrantless search is permissible. (See *People* v. *McKinnon, supra,* 7 Cal.3d at pp. 907-909; *United States* v. *Ogden, supra,* 485 F.2d at p. 540.)

We further hold that whether Officer Vanover observed the contraband in an already opened bag or whether he opened the bag himself is immaterial. Here, Mr. Lomax, acting upon "compelling urgency,"

opened the bag to see if there were weapons or explosives and, once opened, the contraband was in plain view. Mr. Lomax and Mr. Fahy were uncertain as to the precise nature of the contraband and acted reasonably in requesting professional assistance to determine if, in fact, the pills were illegal. The "continuing emergency" justified Officer Vanover's search. Thus, Officer Vanover's conduct was no more than an extension of the plain-sight rule, by augmenting the observations of a layman with the expertise of the police officer. Once Officer Vanover, who established that he was familiar with the appearance of amphetamines and their distinctive packaging, had seen the contraband he had probable cause to arrest defendant. (See *People* v. *Lanthier,* 5 Cal.3d 751, 757-758 [97 Cal.Rptr. 297, 488 P.2d 625] (a university employee's search of lockers in a locker room where contraband was found); *People* v. *Baker,* 12 Cal.App.3d 826, 838 [96 Cal.Rptr. 760] (a bowling alley manager's observation of a weapon and packets of contraband in a handbag in a locker); and *People* v. *Farlow,* 52 Cal.App.3d 414 [125 Cal.Rptr. 118] (an airport security team's discovery of contraband in carry-on luggage).)

Accordingly, by reason of the foregoing, we conclude there was substantial evidence to support the trial court's ruling that the contraband at issue was not the product of an illegal search and seizure.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1976.