**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4115

JOHN BOOTH JOPLIN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4226

ROY H. FREEMAN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4274

BARBARA FREEMAN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4275

MICKEY D. PIPER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4276

RUTH WHEELER,
Defendant-Appellant.

Appeals from the United States District Court
for the District of North Carolina, at Winston-Salem.
William L. Osteen, Sr., District Judge.
(CR-95-195)

Submitted: May 6, 1997

Decided: September 11, 1997

Before WIDENER, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William E. Martin, Federal Public Defender, John Stuart Bruce, Dep-
uty Federal Public Defender, Greensboro, North Carolina; David B.
Freedman, WHITE & CRUMPLER, Winston-Salem, North Carolina,
for Appellants. Walter C. Holton, Jr., United States Attorney, Douglas
Cannon, Assistant United States Attorney, Wendy Joyce, Third Year
Law Student, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

2

**OPINION**

PER CURIAM:

John Joplin, Barbara Freeman, Roy Freeman, Mickey Piper, and Ruth Wheeler appeal their convictions for operating an illegal gambling business, 18 U.S.C.A. § 1955 (West 1994 & Supp. 1997). Joplin also appeals the sentence imposed pursuant to his conviction. Finding no error, we affirm.

I

Electronic draw poker and slot machines were installed in several bars, video arcades, and bingo parlors in the Winston-Salem area. Joplin owned 4 Your Amusement, a company that supplied these establishments with various devices, including the slot and draw poker machines. The poker and slot machines were assembled at the office of 4 Your Amusement with parts shipped to Winston-Salem from a number of states, including California. Customers bought credits which they used to play the machines. The machines deducted or awarded credits, depending upon the fortunes of a given player. Players who had accumulated a certain number of credits could redeem them for cash.

Pursuant to search warrants, law enforcement officials seized over 300 gambling devices located at thirteen businesses. Joplin owned one of the businesses. He had installed the devices at the other businesses, arranging with the owners and/or managers to share in the gambling profits. Piper, Wheeler, and the Freemans each operated one of the businesses housing Joplin's machines. Joplin's employees regularly collected money from the businesses. Officials testified that the Joplin operation ran continuously for over thirty days and had gross revenues of $2000 in any single day.

All five Defendants pleaded guilty to conducting a gambling business that is illegal in the state where it is conducted, 18 U.S.C.A. § 1955; see N.C. Gen. Stat. §§ 14-292, 14-295, 14-296 (1993). Pursuant to their convictions, Wheeler, Piper, and the Freemans were placed on probation. Joplin received a twelve-month sentence.

II

Appellants first challenge their convictions on the ground that Congress exceeded its powers under the Commerce Clause when it enacted § 1955. They urge that the Supreme Court's recent decision in United States v. Lopez, 514 U.S. 549, 63 U.S.L.W. 4343 (1995), bolsters their position. We disagree.

Congress passed § 1955 as part of the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922. In enacting the statute, Congress made several specific findings concerning the manner in which illegal gambling impacted interstate commerce. See United States v. Sacco, 491 F.2d 995, 999 (9th Cir. 1974). Following passage of § 1955, a number of courts rejected claims that the statute exceeded congressional powers under the Commerce Clause. See, e.g., United States v. Leon, 534 F.2d 667, 673-74 (6th Cir. 1976); United States v. Sacco, 491 F.2d at 1001; Schneider v. United States, 459 F.2d 540, 542 (8th Cir. 1972).

In United States v. Lopez, the Supreme Court struck down 18 U.S.C. § 922(q) (1994) as an invalid exercise of the commerce power because that statute "neither regulates a commercial activity nor contains a requirement that the possession [of a firearm in a school zone] be connected in any way to interstate commerce." United States v. Lopez, 63 U.S.L.W. at 4343. The Court noted that not all federal laws passed pursuant to the Commerce Clause and purporting to regulate intrastate commercial activity are constitutional. However, "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." Id. at 4346.

The Sixth Circuit recently reexamined § 1955 in light of Lopez and found, as it did in Leon, that the statute is a valid exercise of the commerce power. United States v. Wall, 92 F.3d 1444, 1450 (6th Cir. 1996), cert. denied, ___ U.S. #6D6D 6D#, 65 U.S.L.W. 3455 (U.S. Jan. 6, 1997) (No. 96-805). Unlike the statute at issue in Lopez, which "by its terms has nothing to do with `commerce' or any sort of economic enterprise," United States v. Lopez, 63 U.S.L.W. at 4346, § 1955 on its face relates to gambling, a commercial activity. United States v. Wall, 92 F.3d at 1449. Further, Congress found strong ties between illegal gambling and interstate commerce. Id. at 1450; see United

4

States v. Sacco, 491 F.2d at 999; see also United States v. Lopez, 63 U.S.L.W. at 4347 (congressional findings regarding the effect of an activity on interstate commerce are relevant to a determination of whether the statute exceeds the commerce power).

It is immaterial that the gambling activity in the subject case was an intrastate enterprise. The Supreme Court has upheld most federal statutes regulating intrastate economic activity. See, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 276-83 (1981) (intrastate coal mining); Perez v. United States, 402 U.S. 146, 155-56 (1971) (intrastate extortionate credit transactions); Katzenbach v. McClung, 379 U.S. 294, 299-300 (1964) (inns and hotels). In all these cases, the broad economic activity regulated substantially affected interstate commerce. Lopez, 63 U.S.L.W. at 4345-46. As long as the general economic activity that a statute regulates has the required nexus to interstate commerce, convictions under that statute "do not require a showing . . . that the gambling activities of a particular defendant have affected commerce." Schneider v. United States, 459 F.2d at 541. Thus, in Wall, the court sustained a conviction under § 1955 even though the gambling was purely local, with no ties to organized crime: "Congress . . . may regulate commercial activities that, although intrastate in nature, comprise a class of activities that substantially affect interstate commerce. Courts may not excise individual instances of a class of commercial activities that is within the reach of federal power." United States v. Wall, 92 F.3d at 1450-51 n.14.

We agree with the cited authorities and hold that § 1955 constitutes a valid exercise of the commerce power. The statute regulates a commercial activity, illegal gambling, which Congress has determined to have significant ties to interstate commerce. Whether, in a given case, the particular illegal gambling activity is purely intrastate in nature is immaterial to the question of the statute's validity under the Commerce Clause.

III

Appellants next contend that § 1955 violates the Equal Protection Clause because it makes illegal an activity which might be legal else-

5

where in the United States. Courts of appeals have routinely rejected such an argument. The Eighth Circuit observed:

> The Supreme Court has stated that there is no requirement of national uniformity when Congress exercises its power under the commerce clause. . . . The Supreme Court has also approved, in a variety of contexts, the incorporation of state laws into federal statutes.

Schneider v. United States, 459 F.2d at 542-43 (citations omitted). Other circuits to have addressed the matter unanimously agree that § 1955 does not violate the Equal Protection Clause. See United States v. Hawes, 529 F.2d 472, 477-78 (5th Cir. 1976); United States v. Smaldone, 485 F.2d 1333, 1342 (10th Cir. 1973). We are in accord with these decisions.

IV

The district court increased Joplin's offense level by four levels because the court found that he was an organizer or leader of a criminal activity involving five or more participants. USSG § 3B1.1.* Joplin contests this increase. We review the district court's finding for clear error. See United States v. Daughtrey , 874 F.2d 213, 217 (4th Cir. 1989).

Joplin owned the machines that were confiscated. He approached the owners and operators of various establishments to see if they were interested in having the machines installed at their businesses and then sharing the profits. His employees routinely collected Joplin's share of the gambling profits from the businesses. For these reasons, there was no clear error.

V

We accordingly affirm the convictions as well as Joplin's sentence. We dispense with oral argument because the facts and legal conten-

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1995).

tions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7