**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Gregory C. KRUG, Defendant—**
**Appellant.**

No. 99–6542.

United States Court of Appeals,
Sixth Circuit.

Aug. 30, 2001.

272

Before MERRITT and JONES, Circuit Judges, ECONOMUS, District Judge.*

PER CURIAM.

Defendant–Appellant Gregory Krug appeals his conviction for possession of an unregistered silencer in violation of 26

U.S.C. § 5861(d) (2001), shipping a firearm on a common carrier without notice in violation of 18 U.S.C. § 922(e) (2001) and 18 U.S.C. § 924(a)(1) (2001), and transporting a firearm in interstate commerce with the intent to commit murder in violation of 924(b) (2001). Krug proceeds *pro se* and raises numerous arguments: (1) that the evidence was insufficient to support any of the counts of conviction, (2) that the jury was not properly instructed, (3) that the district court erred by failing to agree to a firearms demonstration, (4) that the grand jury was deceived, (5) that perjured testimony was presented to the grand jury and at trial, (6) that the district court erred by denying Krug's motion to suppress, (7) that the verdict form contained errors, and (8) that the district court improperly sentenced the defendant. We find all of Krug's arguments to be without merit; thus, we affirm the district court.

I.

On Saturday, October 10, 1998, Defendant–Appellant Gregory Krug approached the American Airlines ticket counter at the Nashville Metropolitan Airport to check in for a flight to Los Angeles. He gave the agent, Janet Woerner, his ticket and put one bag in the baggage well. The agent generated a boarding pass and a bag tag for the bag in the well. Woerner testified that there was a sign on the well directing passengers to declare the presence of firearms or ammunition they wished to transport.

Woerner proceeded to ask Krug federally mandated questions. According to her testimony, she asked whether any of the articles that he was carrying with him had

* The Honorable Peter C. Economus, United States District Judge for the Northern District    of Ohio, sitting by designation.

been out of his possession since he packed them. He responded, "no, the bomb was in the bag yesterday." (J.A. at 509.) At that point, Woerner went got her supervisor, Don Thomas.

Thomas escorted Krug to the security checkpoint, and security personnel x-rayed his bag. While they were waiting for a police officer to arrive so a "dump search" could be performed, Krug told Thomas that he had a weapon in the bag. The "dump search" revealed a .22 pistol with wood dowels wrapped around the barrel, a black hose with holes in it, ammunition, handcuffs, and a ten-inch-long knife.

Officer Vince Dye took Krug to the police offices at the airport and placed him under arrest. Dye testified that after Miranda warnings were read, Krug told another officer that he used the black hose to keep the noise down when he was shooting in the back of his house. Dye turned Krug's bag and his briefcase over to the Metropolitan Police Department's property and evidence section.

Jason Osborn, who received the bags in the property room and conducted an inventory search, testified that when he looked in a file marked "Fielder," which contained notes of a murder plan, he feared that someone was dead. He called the Secret Service, the ATF, and the FBI.

Krug's briefcase contained more than a dozen files, many of which were labeled with individual names. There was a file for Attorney David Fielder of Nashville, Judge Ronald Bauer of California, Judge Thomas Hull, Judge James Jarvis, Judge Leon Jordan, Judge Danny Boggs, and others. The files contained documents such as receipts, maps, and handwritten notes. Krug's sister, Katherine (Crudup) Barron, identified the handwriting as Krug's. Judge Bauer's file contained directions to his home and notes such as "shoot from street" and "follow him home. K him when he gets out of car." (J.A. at 1127, 1131.) David Fielder's file also contained maps, directions to his home, and notes such as "kill all." A file labeled "Shook" contained a "targets" list. On the list were: Bauer, Jarvis, Hull, Crudup (his sister), "CA–6," and others. (J.A. at 1150.)

According to an attorney for the Krug family, Krug had been unsuccessfully involved in numerous lawsuits. Many judges and attorneys referenced in his files were connected to these suits. For instance, Judge Bauer was the trial judge in a case between Krug and Linda Pethick, the attorney who had represented Krug in previous litigation before Judge Inman. Judge Inman was also included on Krug's list of targets. Judge Bauer's daughter testified that sometime around early October of 1998, she saw Krug taking pictures of her parents' home.

Pursuant to the superseding indictment, Krug was charged with violating 26 U.S.C. § 5861(d) by possessing a silencer, 18 U.S.C. § 922(e) and § 924(a)(1) by checking firearms onto an airliner without notice, and 18 U.S.C. § 924(b) by transporting firearms in interstate commerce with the intent to commit murder. (J.A. at 49.) Prior to the trial, Krug filed a motion to suppress the evidence seized from his luggage, and the district court denied the motion. A jury found Krug guilty on all three counts of the indictment.[1] The court sentenced Krug to 120 months imprisonment. (J.A. at 240.)

---

1. With respect to Count Three, the jury found Krug guilty of knowingly shipping or transporting a firearm or ammunition in interstate commerce from Tennessee to California with the intent to murder Judge Ronald Bauer. The jury did not, however, find Krug guilty of transporting a firearm from California to Tennessee with the intent to commit murder, i.e., of David Fielder. (J.A. at 141–42.)

## II. Sufficiency of the Evidence

In reviewing the sufficiency of evidence to support a conviction we must view the evidence in the light most favorable to the prosecution. *See United States v. Head,* 927 F.2d 1361, 1365 (6th Cir.1991). We will affirm the verdict as long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995). "[T]his court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *See United States v. Maliszewski,* 161 F.3d 992, 1006 (6th Cir.1998).

### A. 26 U.S.C. § 5861(d) Possession of Unregistered Silencer

■ The jury found Krug guilty of possessing an unregistered silencer in violation of 26 U.S.C. § 5861(d). Krug argues, however, that insufficient evidence was produced at trial to support the conclusion that the black hose device ("the device") found in his luggage was a silencer. We disagree.

A firearm silencer, for purposes of 26 U.S.C. § 5861(d), is defined as:

[A]ny device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

18 U.S.C. § 921(a)(24); *see also* 26 U.S.C. § 5845(a)(7) (2001) (providing that the term firearm includes silencers as defined in 18 U.S.C. § 921). This Court has previously determined that a device that produced a ten-decibel reduction "significantly diminished the report of a portable firearm." *United States v. Poulos,* 895 F.2d 1113, 1121 (6th Cir.1990); *abrogated on other grounds in Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (emphasis added) (internal quotation omitted).

Agent Richard Craze, testifying as an expert, stated that he tested the device with the pistol found in defendant's luggage, and the tests demonstrated that the device reduced the weapon's report by 8.8 decibels. (J.A. at 575.) In Agent Craze's opinion the device was a firearms silencer as defined in Chapter 18 of the United States Code. (J.A. at 575.)[2] In addition, one of the agents who took Krug into custody at the airport said that Krug told him that he used the device to keep the noise down when shooting in the back of his house. (J.A. at 546–47.)

Thus, the evidence was sufficient to allow a rational trier of fact to conclude that the device did operate as a silencer.[3]

### B. 18 U.S.C. § 922(e) and 924(a)(1)

The evidence put forth at trial was also sufficient to support Krug's conviction for

---

**2.** Krug's own expert, J.B. Wood, testified that Craze's report and the 8 decibel reduction finding, "sound[ed] reasonable" and said that he had no reason to doubt Craze's conclusion. (J.A. at 866–67.)

**3.** Contrary to Krug's contention, we conclude that the district court did not abuse its discretion by allowing Agent Craze, who had worked for the ATF for 20 years, had attended and conducted training on firearms and silencers, and had examined over 2,000 silencers, to testify as an expert on this matter. We also note that Krug's challenge to the believability of portions of Agent Craze's testimony is unavailing because we leave credibility determinations up to the jury. *United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999).

transporting a firearm on a common carrier. Section 922(e) of Title 18 of the United States Code provides:

> It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter. No common or contract carrier shall require or cause any label, tag, or other written notice to be placed on the outside of any package, luggage, or other container that such package, luggage, or other container contains a firearm.

18 U.S.C. § 922(e). Section 924(a)(1)(D) is the penalty provision, and it provides that whoever "willfully violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. § 924(a)(1)(D).

First, Krug argues that he did not "deliver" the bag with the weapons to the airline. In *United States v. Hartzog,* 983 F.2d 604, 605 (4th Cir.1993), the defendant, who was carrying firearms in his bag, was stepping up onto a train when he was arrested. The court held that under these circumstances a rational trier of fact could find the defendant guilty of violating § 922(e), given that he had not given notice to the carrier. *See id.* at 607. The court explained that "[n]o court construing section 922 has required complete surrender of control as a condition of liability." *Id.* at 606. Rather, the court said, "[a] delivery of a firearm is effectuated as much when it is placed upon or affixed in some way to an exterior appurtenance or when it is surrendered to carrier employees for loading, as when it is carried into the interior cabin of a carrier." *Id.* at 607. We agree with this interpretation of the statute.

■ In the case at bar, the evidence presented was sufficient for a rational trier of fact to find that Krug surrendered his luggage to airline employees for loading. Janet Woerner was the airline employee who was at the counter when Krug approached to check in for his flight from Nashville to Los Angeles. She testified that Krug put his baggage in the baggage well and that she generated a bag tag for one bag to Los Angeles. (J.A. at 508–09.) Woerner's supervisor, Don Thomas, testified that when he arrived at the ticket counter Krug's bag was in the baggage well and tagged for Los Angeles. (J.A. at 527.) This is sufficient evidence to allow a juror to find that Krug had delivered the bag containing the firearms to the airline.

Krug also argues that the evidence was insufficient to show that he "willfully" violated the statute. The Supreme Court has held that the inclusion of "willful" in § 924(a)(1)(D) requires that "[t]he jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan v. United States,* 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *see also United States v. Andrade,* 135 F.3d 104, 110 (1st Cir.1998) (holding that § 924(a)(1)(D) requires that

the defendant must have been aware that his conduct was unlawful).

■ In this case the government presented sufficient evidence for the jury to conclude that Krug had acted with the knowledge that his conduct was unlawful. Airline employee Woerner testified to the presence of a sign on the baggage well that warns passengers that they must declare the presence of any firearms. (J.A. at 520–21.) Moreover, Krug's own files contained a paper with numerous lists and notes demonstrating that he had spent a great deal of time preparing for his trip and planning his activities. Indeed, one of his notations could easily be interpreted to pertain to an inquiry on in his part into whether the airline x-rays luggage before it is put on the plane. (J.A. at 1082.)

Third, Krug argues that he satisfied the passenger exception to § 922(e) by informing Thomas, before the police arrived, that he had a firearm in his bag. Section 922(e) provides an exception to the written notice requirement for passengers of a common carrier. However, it states that "any passenger who owns or legally possesses a firearm or ammunition being transported aboard a common carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator ... for the duration of the trip...." 18 U.S.C. § 922(e). Courts have held that the "purpose is to effect delivery of the firearm in a manner that makes the carrier aware that a firearm is being transported," *United States v. Dunn,* 813 F.2d 1124, 1125 (11th Cir.1987), and that to satisfy this exception "a passenger must give the carrier at least actual notice that the item to be transported is a firearm or ammunition," *United States v. Udofot,* 711 F.2d 831, 838 (8th Cir.1983); *see also United States v. Williams,* 485 F.2d 1383, 1385 (4th Cir.), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1947, 40 L.Ed.2d 293 (1974) (holding that to satisfy the passenger exception the passenger must transfer control of the firearm in a manner that gives the carrier actual notice of the firearm's presence).

■ When Krug took his bag to the counter, put it in the baggage well, and began the check-in process with Woerner, he did not inform her that he had a firearm in his luggage. Thus, he did not deliver the bag in a manner that would make the airline aware that he was transporting a firearm. In fact, he did not reveal that his luggage contained firearms until he had accompanied Thomas to the security station, his bag had gone through the X-ray machine, and they were waiting for police to arrive to do a "dump search" of the bag. This type of delayed admission is not sufficient to satisfy the passenger exception.

### C. 18 U.S.C. § 924(b)

■ Krug argues that the evidence was insufficient to support his conviction for violating 18 U.S.C. § 924(b). Section 924(b) provides:

Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined under this title, or imprisoned not more than ten years, or both.

18 U.S.C. § 924(b). The government argues that there is sufficient evidence to show that Krug shipped or transported his pistol, silencer, and ammunition in interstate commerce with the intent to use these items in the planned murder of

Judge Ronald Bauer. We agree with the government.

First, Krug contends that insufficient evidence was presented to prove that he intended to commit a felony—the murder of Judge Bauer—and that he intended to do so with the pistol and silencer found in his luggage. Krug's bag contained a file on Judge Ronald Bauer of California. The file contained pictures of Bauer's house, handwritten directions to Bauer's house (with his address), and maps of the surrounding area. The file also contained two sheets that appear to be Krug's instructions to himself—essentially "To Do" lists. One has a notation that says, "delay hit until Dec." (J.A. at 1127.) Another says,

ID his car in Am

recon escape route

√ nite lighting @ his house

recon L.T. parking 4 # of attendants and lighting

1) pos Ford in ? parking lot ... [indecipherable]

2) find a place 2 wait 4 him 2 drive by

3) follow him home

4) K him when he gets out of his car

(J.A. at 1131.) In addition, Judge Bauer's daughter testified that he saw Krug taking pictures outside of their home in (approximately) early October of 1998, which would have been just prior to Krug's arrest at the Nashville airport.

Krug argues that certain notations in his file demonstrate that his notes about killing Judge Bauer were left over from an earlier plan and that he had intended to use an M–1 to carry out that task, not the pistol and silencer found in his luggage. However, viewing the evidence in the light most favorable to the jury's verdict, sufficient evidence was presented at trial to allow a rational juror to conclude that he was transporting the firearm and silencer to California with the intent to murder Judge Bauer.[4]

Second, Krug argues that there is no evidence to suggest that the firearm and ammunition were ever transported/shipped in interstate commerce because he was arrested before he left the Nashville airport. He does concede, however, that he intended to transport the items to California when he arrived at the Nashville airport on October 10, 1998. (Appellant's Br. at 29.)

"It is well established ... that an article delivered to a common carrier for shipment to another state is in interstate commerce from the time of its delivery to the carrier until it reaches the consignee." *United States v. Burton*, 475 F.2d 469, 472 (8th Cir.), *cert. denied*, 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973) (construing predecessor statute to 18 U.S.C. § 921 and affirming conviction for possession of a firearm traveling in interstate commerce despite defendant's argument that the transportation element was not proven) (citing *United States v. May*, 419 F.2d 553 (8th Cir.1969) and *U.S. v. Jones*, 446 F.2d 48 (4th Cir.1971)). The jury was so instructed. (J.A. at 947.) Based on the testimony that Krug had placed the bag in the baggage well so that it could be tagged and put on the plane and that Woerner generated a baggage tag, a rational trier of fact could have concluded that the bag with the firearm, silencer, and ammunition had been delivered to the airline in Nashville and was bound for California. Thus, sufficient evidence was presented to support the jury's conclusion that the firearms were in interstate commerce when the government seized the bag.

---

**4.** It bears noting that for sentencing purposes the district court independently credited the jury's finding that Krug was guilty of knowingly shipping or transporting a firearm in interstate commerce from Tennessee to California with the intent to murder Judge Bauer. (J.A. at 250.)

## III.

In addition, Krug argues: (1) that the jury was not properly instructed, (2) that the district court erred by failing to agree to a firearms demonstration, (3) that the grand jury was deceived, (4) that perjured testimony was presented to the gand jury and at trial, (5) that the district court erred by denying Krug's motion to suppress, (6) that the verdict form contained errors, and (7) that the district court committed errors in sentencing. We have carefully considered these arguments and reviewed the record. We find all of Krug's arguments to be without merit.

For the foregoing reasons we affirm defendant's conviction and sentence.